# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 04 2017, 10:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cynthia Phillips Smith
Law Office of Cynthia P. Smith
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of A.S.P. (Minor Child)

and

T.P. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

October 4, 2017

Court of Appeals Case No. 79A04-1705-JT-989

Appeal from the Tippecanoe Superior Court

The Honorable Faith A. Graham, Judge

The Honorable Tricia L. Thompson, Magistrate

Trial Court Cause No. 79D03-1606-JT-56

**Crone, Judge.**

## Case Summary

[1] T.P. ("Mother") appeals a trial court order terminating her parent-child relationship with her seven-year-old son, A.S.P.[1] She raises one issue, which is whether the evidence is sufficient to support the termination order. We affirm.

## Facts and Procedural History

[2] In 2011, one-year-old A.S.P. was removed from Mother and Father's care on a report of neglect. The Department of Child Services ("DCS") initiated proceedings to have the child adjudicated a child in need of services ("CHINS"). A.S.P. tested positive for methamphetamine and was eventually adjudicated a CHINS ("2011 CHINS"). Mother failed to participate in the ordered services, and the 2011 CHINS court ordered the case closed and granted sole custody to Father.

[3] In December 2011, Mother tested positive for methamphetamine and was the subject of a CHINS action in another county as to A.S.P.'s three older half siblings. She completed treatment, and the case was eventually closed.

[4] In April 2014, A.S.P. was residing with Mother and his half siblings while Father sought housing and employment. DCS removed the children from Mother after receiving a report concerning Mother's illegal drug use and child

---

[1] The termination order also terminated the parental rights of A.S.P.'s father, S.P. ("Father"). Father is not participating in this appeal.

neglect, i.e., children were dirty and chronically tardy for school. A.S.P. tested positive for methamphetamine, and Mother tested positive for marijuana. In June 2014, the trial court adjudicated A.S.P. and his half siblings as CHINS and ordered that Mother participate in services, which included completing parenting and substance abuse assessments, participating in home-based case management, obtaining suitable and safe housing, refraining from alcohol and illegal drug use; submitting to random drug screens, attending visitation as ordered, and maintaining contact with DCS personnel and the court.

[5] During the first several months of the CHINS pendency, Mother was cancelled out of most of her services due to nonparticipation. During the first quarter of 2015, she became actively engaged in services and progressed to the point where A.S.P. and his half siblings were placed on a trial home visitation with Mother, who was residing at her mother's home. Within five months, the trial home visitation was closed due to Mother's failure to maintain the home in a safe and sanitary condition, failure both to attend her own service appointments and to ensure that A.S.P. attended his service appointments, failure to personally supervise the children, and her positive alcohol screen. About that same time, Mother's family was evicted for nonpayment of rent, and the children were placed in other homes. Mother eventually secured an apartment, and DCS personnel attempted to resume services. Mother did not maintain contact with DCS, and her referral for home-based services was eventually cancelled for noncompliance. During 2016, she failed to appear for several weekly drug screens as ordered.

[6] In June 2016, DCS filed a petition for termination of Mother's parental rights.[2] Following a factfinding hearing, the trial court issued an order with findings of fact and conclusions thereon, terminating Mother's parent-child relationship with A.S.P.

[7] Mother now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

[8] Mother challenges the sufficiency of the evidence to support the trial court's judgment terminating her parental relationship with A.S.P. When reviewing a trial court's findings of fact and conclusions thereon in a case involving the termination of parental rights, we first determine whether the evidence supports the findings and then whether the findings support the judgment. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). We will set aside the trial court's judgment only if it is clearly erroneous. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We neither reweigh evidence nor judge witness credibility. *E.M.*, 4 N.E.3d at 642. Rather, we consider only the evidence and inferences most favorable to the judgment. *Id.* "[I]t is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by the appellant before there is a basis for reversal." *Best v. Best*, 941 N.E.2d 499, 503 (Ind. 2011) (citations omitted).

[9] In *Bester*, our supreme court stated,

---

[2] Mother signed consents for adoption of A.S.P.'s three half siblings, and they are not subjects of this appeal.

The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests. Indeed the parent-child relationship is one of the most valued relationships in our culture. We recognize of course that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

839 N.E.2d at 147 (citations, quotation marks, and alteration omitted).

To obtain a termination of a parent-child relationship, DCS is required to establish in pertinent part:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

....

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2).

[11] In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard. Ind. Code § 31-37-14-2; *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied*. "Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's survival. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional and physical development are threatened by the respondent parent's custody." *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013) (citation omitted).

## Section 1 – Mother has failed to demonstrate clear error concerning the reasonable probability that the conditions that led to A.S.P.'s removal will not be remedied.

[12]     Mother asserts that the evidence is insufficient to support the trial court's conclusion that a reasonable probability exists that the conditions that led to A.S.P.'s removal will not be remedied.[3]  Where, as here, Mother does not specifically challenge any of the trial court's findings, we simply determine whether the unchallenged findings are sufficient to support the judgment.  *T.B. v. Ind. Dep't of Child Servs.*, 971 N.E.2d 104, 110 (Ind. Ct. App. 2012), *trans. denied*.  When assessing whether there is a reasonable probability that conditions that led to a child's removal will not be remedied, we must consider not only the initial basis for the child's removal but also the bases for continued placement outside the home.  *In re A.I.*, 825 N.E.2d 798, 806 (Ind. Ct. App. 2005), *trans. denied*.  Moreover, "the trial court should judge a parent's fitness to care for his [or her] children at the time of the termination hearing, taking into consideration evidence of changed conditions."  *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*.  "Due to the permanent effect of termination,

---

[3]  Mother also challenges the trial court's conclusion that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to A.S.P.'s well-being.  Indiana Code Section 31-35-2-4(b)(2)(B) requires DCS to prove only *one* of the three circumstances listed.  Because we find no error concerning the reasonable probability that the conditions will not be remedied, we need not address the threat to the child's well-being.  We note that the termination statute was amended in 2010 to include the following alternative to unremedied circumstances and threat to well-being: "The child has, on two (2) separate occasions, been adjudicated a child in need of services."  Ind. Code § 31-35-2-4(b)(2)(B)(iii).  This is significant because A.S.P. was adjudicated a CHINS in a separate proceeding in 2011.  The trial court entered findings on A.S.P.'s previous CHINS adjudication but does not appear to have relied on it as the basis for its termination order.  *See* Appellant's App. Vol. 2 at 10, 14 (findings 2 and 35, conclusions 1-4).  We observe that Mother has quoted the pre-2010 version of the statute in her brief and remind her to include the version of the statute in effect when the termination petition was filed.

the trial court also must evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id.* In making its case, "DCS need not rule out all possibilities of change; rather, [it] need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Kay.L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007). The court may properly consider evidence of a parent's substance abuse, criminal history, lack of employment or adequate housing, history of neglect, and failure to provide support. *McBride v. Monroe Cty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003).

[13] Mother asserts that she is currently stable and has essentially remedied the conditions that led to A.S.P.'s initial removal. Those conditions include neglect, Mother's methamphetamine use, unsanitary living conditions, A.S.P.'s positive test positive for methamphetamine, and Mother's positive test for marijuana. In its dispositional order following the CHINS adjudication, the trial court ordered that Mother secure and maintain employment and safe, stable housing and that she participate in parenting and substance abuse assessments, home-based case management, visitation, and drug screens.

[14] In its termination order, the trial court issued extensive findings concerning Mother's patterns of conduct that bear negatively on the reasonable probability of her remedying the conditions that led to A.S.P.'s removal. To summarize, Mother completed a substance abuse assessment and clinical interview but did not complete a parenting assessment. She participated in therapy early in the CHINS proceedings but ceased participation by the summer of 2016. She was

discharged from several home-based management providers for noncompliance. She made strides in her visitation and was afforded a trial home visitation, which lasted about five months and was ultimately closed due to unsafe, unsanitary living conditions at Mother's home and Mother's persistent reliance on her own mother as the children's primary caregiver. Thereafter, her participation in services was minimal, and she failed to stay in contact with DCS as ordered. She was employed during most of the CHINS proceedings, initially bouncing from job to job (four different jobs in the first six months), but having a couple longer stints of employment.

[15] As for housing, the trial court found that Mother maintained housing for most of the pendency of the CHINS case, initially living in her mother's home and then moving to an apartment with her boyfriend. When her boyfriend was incarcerated, she moved back in with her mother. They were several thousand dollars in arrears on rent; utilities were twice disconnected for nonpayment; and conditions such as bedbugs, lice, broken plumbing, and trash strewn throughout the house resulted in the closure of the trial home visitation with A.S.P. and his half siblings. DCS family case manager Dellie Wells reported that during the time when the children were at Mother's house, there was a broken window that was left unrepaired and uncovered. Tr. Vol. 2 at 73. The family was evicted, and Mother moved into her own apartment, which DCS personnel observed to be so cluttered with boxes and clothes as to make it difficult to walk around. Mother lived in the apartment for a year but faced possible eviction twice due to unpaid rent. The court found that despite her living conditions

and unpaid bills, Mother spent money on unnecessary items such as tanning and brand-name shoes and failed to avail herself of community resources such as food pantries.

[16] Mother's history of drug use includes a felony conviction for possession of methamphetamine as well as a conviction for operating while intoxicated. She failed several drug screens in the first six months of the CHINS proceedings and failed to appear for several other screens. Wells testified concerning an incident in which she came to Mother's house for a random drug screen, and Mother tested positive for alcohol (.08 percent blood alcohol concentration) immediately after having driven home from the hardware store. *Id*. at 74.[4] Mother went a few months with clean drug screens, followed by positive screens for marijuana in the summer and fall of 2016, after the permanency plan had been changed from reunification to termination and adoption.

[17] In examining the evidence and unchallenged findings, we find it sad and troubling that A.S.P.'s behavior regressed during his trial home visitation with Mother. As part of the trial home visitation, Mother was required to immediately engage in therapy services for A.S.P., but Wells explained that Mother's attendance at those sessions was sporadic and that, when Mother did attend the sessions, she was impatient with A.S.P. *Id*. at 72. Wells testified that after the trial home visitation had failed, Mother maintained weekly visits but

[4] At one point during the CHINS pendency, Mother's driver's license was suspended for one year for driving without insurance, and at the time of the termination factfinding, she said that she would not seek to have it reinstated due to lack of funds.

was often disengaged and frustrated during those visits. *Id.* at 93. Wells also reported that when A.S.P. was placed in foster care, Mother made no effort to communicate with A.S.P. by phone even though she was afforded the privilege of doing so. *Id.* at 92. In short, despite some strides in her employment, Mother has failed to demonstrate significant, sustained improvement in other areas. In fact, when it comes to her participation in services, she has regressed. The evidence and unchallenged findings are sufficient to support the trial court's conclusion that there is a reasonable probability that the conditions that led to A.S.P.'s removal will not be remedied.

## Section 2 – Mother has failed to establish clear error concerning A.S.P.'s best interests.

[18]    Mother asserts that the trial court clearly erred in concluding that termination is in A.S.P.'s best interests. Although not dispositive, permanency and stability are key considerations in determining the best interests of a child. *In re G.Y.*, 904 N.E.2d 1257, 1265 (Ind. 2009). A determination of a child's best interests should be based on the totality of the circumstances. *In re A.P.*, 981 N.E.2d 75, 84 (Ind. Ct. App. 2012).

[19]    The trial court's findings with respect to A.S.P.'s best interests include the following:

> 33. The child has been diagnosed with Reactive Attachment Disorder, Adjustment Disorder, and Disruptive Behavior. The child participated in therapy and home-based life skills training. The plan for the child is adoption by the concurrent (sic) foster home. The child is doing well in the foster home which provides

a stable environment and ensures the child's needs are met.

34.  CASA, Shaeley Schmidt, supports the plan of adoption for the child.  CASA notes the child has behavioral, educational, and mental health issues.  The child needs a caregiver who is stable and can manage the child's challenges.  CASA notes that Mother has not demonstrated an ability to provide for the child's needs.  The Father has essentially abandoned the child.

35.  The child has been adjudicated a CHINS on two (2) separate occasions and tested positive for methamphetamine in both cases.  The child has suffered from instability during his young life and needs a stable, permanent home.  The child has been in approximately five (5) foster homes throughout the course of both CHINS cases.  This child has spent the majority of his life in a CHINS case and needs permanency now.  To continue the parent-child relationships would be detrimental to the child.

Appellant's App. Vol. 2 at 14.

[20]  Here, the totality of the circumstances shows a child with significant challenges, many of which can be traced to the lack of stable, consistent care throughout his young life.  He has been bounced from home to home, having been in and out of his parents' care, in relative care, and in several foster homes.  Mother, though seemingly well-meaning, struggles with significant challenges of her own.  Her inability to stay away from drugs for any prolonged period has resulted in her unstable and unsanitary living conditions, which in turn, have negatively affected A.S.P.'s behavior as well as his mental stability and physical health and safety.  A.S.P. has twice been adjudicated a CHINS, and in both instances, this young child tested positive for illegal drugs.  He is now at a point

where his mental, emotional, and educational needs require additional care and consistency that Mother simply cannot provide. CASA Schmidt concluded, and the trial court agreed, that termination of Mother's parental rights and adoption by the current foster parents are in A.S.P.'s best interests. "[T]he testimony of the service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed*. The totality of the circumstances supports the trial court's conclusion that termination is in A.S.P.'s best interests.

[21] Mother has failed to establish clear error in the trial court's decision to terminate her parent-child relationship with A.S.P. Consequently, we affirm.

[22] Affirmed.

Vaidik, C.J., and Mathias, J., concur.